UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**     CASE NO. 15-CR-20362

        Plaintiff,     HON. NANCY G. EDMUNDS

v.

                                             VIO: 18 U.S.C. § 1349
                                                         18 U.S.C. § 1347
**D-1 DR. GERALD DANESHVAR,**             18 U.S.C. § 982
**D-2 DR. STEPHEN MASON, and**
**D-3 DR. LEONARD VAN GELDER,**

        **Defendants.**
_____/

## FIRST SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES:

### General Allegations

At all times relevant to this First Superseding Indictment:

    1.    The Medicare program was a federal health care program providing benefits to persons who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United State Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.     Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3.     The Medicare program included coverage under several components, including Part A and Part B. Medicare Part A covered physical therapy, occupational therapy, and skilled nursing services if a facility was certified by CMS as meeting certain requirements. Medicare Part B covered the cost of physicians' services and other ancillary services not covered by Part A.

4.     National Government Services was the CMS contractor for Medicare Part A in the state of Michigan. Wisconsin Physicians Service was the CMS contracted carrier for Medicare Part B in the state of Michigan.

5.     By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Social Security Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors.

6.     Upon certification, the medical provider, whether a clinic or an individual, was assigned a provider identification number for billing purposes (referred to as a PIN). When the medical provider rendered a service, the provider

submitted a claim for reimbursement to the Medicare contractor/carrier that included the PIN assigned to that medical provider. When an individual medical provider was associated with a clinic, Medicare Part B required that the individual provider number associated with the clinic be placed on the claim submitted to the Medicare contractor.

7. Health care providers were given and/or provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations. Providers could only submit claims to Medicare for services they rendered and providers were required to maintain patient records to verify that the services were provided as described on the claim form.

8. To receive reimbursement for a covered service from Medicare, a provider was required to submit a claim, either electronically or using a form (e.g., a CMS-1500 form or UB-92) containing the required information appropriately identifying the provider, patient, and services rendered.

### **Visiting Physician and Home Health Care Requirement**

9. Medicare's coverage for an in-home physician visit requires the physician to document the reason a house call was necessary; for example, an office visit would require ambulance transport or excessive physical effort or cause pain, or the patient is home-bound.

3

10. Home health services covered under Medicare Part A were furnished by home health agencies, which received payment from Medicare for furnishing such services. In order for home health services to qualify for payment under Medicare, the following conditions had to be met:

   a. the beneficiary was homebound;

   b. the beneficiary needed intermittent skilled nursing care, or other qualifying services;

   c. the beneficiary was under the care of a physician who specifically determined there was a need for home health services and established a plan of care ("POC") that he or she periodically reviewed ("the Treating Physician");

   d. the services were furnished while the beneficiary was under the care of the Treating Physician; and

   e. the Treating Physician signed a certification (or recertification) specifying that all of the preceding conditions existed.

11. Under the Medicare statute, a beneficiary is homebound if the individual is confined to home because of a condition, due to an illness or injury, that restricts the ability of the individual to leave his or her home except with the assistance of another individual or the aid of a supportive device (such as crutches,

a cane, a wheelchair, or a walker), or if the individual has a condition such that leaving his or her home is medically contraindicated.

12. Home health services are certified and billed for in 60-day increments known as "episodes." Each episode requires its own certification. To certify a patient, a physician must sign a form entitled, "Home Health Certification and Plan of Care," which is sometimes referred to as a "Form 485."

13. Physician services covered under Medicare Part B included some services related to home health, including a physician's home health certification or recertification. Medicare Part B also covered "home visits" for evaluation and management services provided to a beneficiary by a physician or, in some circumstances, a nurse practitioner or a physician's assistant, in a private residence. In order for a home visit to qualify for payment under Medicare, the home visit, in lieu of an office or outpatient visit, had to be medically necessary and the medical necessity had to be documented. In addition, a physician could not bill Medicare for personally making a home visit unless the physician was actually present in the beneficiary's home during the visit.

14. Medicare Part A and Part B regulations required home health agencies and physicians providing services to beneficiaries to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of beneficiaries, as well as records documenting actual treatment of the beneficiaries

to whom services were provided and for whom claims for payment were submitted to Medicare. These records were required to be sufficient to permit Medicare to review the appropriateness of Medicare payments made under Medicare Part A and Medicare Part B.

15. Medicare authorized payment for home visits and at-home physician services only if those services were actually provided and were medically necessary. Medicare did not authorize payment for services and treatment that were not actually provided or for which that patient did not meet the criteria necessary to justify the claimed service or treatment.

### CPT Codes

16. Physician visits to a patient's home are billed to Medicare using codes established by the American Medical Association, referred to as "Current Procedural Terminology" or "CPT codes." The CPT system provided a national coding practice for reporting services performed by physicians and for payment of Medicare claims.

17. For a physician to be able to bill a home visit under these codes, the record must document, among other things, the medical necessity of the home visit made in lieu of an office or outpatient visit.

18. A physician visit to a new patient's home is billed using CPT codes 99341 through 99345. A physician visit to an established patient's home is billed

using CPT codes 99347 through 99350. For each of these series of CPT codes, a higher code number corresponds to a more in-depth and time-consuming level of service, with a correspondingly higher reimbursement amount.

19. Medicare payments for claims submitted using CPT codes 99349 and 99350 were more than the payments for claims submitted using CPT codes 99347 and 99348, with the payment for claims submitted using CPT code 99350 approximately three times higher than the payment for claims submitted using CPT code 99347.

### Relevant Entities and Individuals

20. Lake MI Mobile Doctors, PC ("Mobile Doctors" or "MD") was headquartered in Chicago, Illinois, and had a registered address in Southfield, Michigan. Articles of incorporation for Mobile Doctors were filed in Michigan in or around July 2008. Mobile Doctors purported to provide in-home physician services in the Eastern District of Michigan, operating from the registered address of 24445 Northwestern Highway, Suite 206, Southfield, Michigan 48075.

21. **D-1 GERALD DANESHVAR**, a resident of Oakland County, Michigan, was a physician licensed in Michigan who purportedly provided contractual medical services to Mobile Doctors.

22.  **D-2 STEPHEN MASON**, a resident of Indianapolis County, Indiana, was a physician licensed in Michigan and Wisconsin who purportedly provided contractual medical services to Mobile Doctors.

23.  **D-3 LEONARD VAN GELDER**, a resident of Kent County, Michigan, was a physician licensed in Michigan and Florida who purportedly provided contractual medical services to Mobile Doctors.

24.  Co-Conspirator Dike Ajiri, a resident of Chicago, Illinois, was the Chief Executive officer and owner of Mobile Doctors.

## COUNT 1
### (18 U.S.C. § 1349 – Conspiracy to Commit Health Care Fraud)
### D-1 GERALD DANESHVAR
### D-2 STEPHEN MASON
### D-3 LEONARD VAN GELDER

25.  Paragraphs 1 through 24 of the First Superseding Indictment are re-alleged and incorporated by reference, as though fully set forth herein.

26.  From in or around May 2011, and continuing through in or around August 2013, the exact dates being unknown to the Grand Jury, in Wayne County, in the Eastern District of Michigan, and elsewhere, the defendants,

**GERALD DANESHVAR,**
**STEPHEN MASON,**
**and**
**LEONARD VAN GELDER,**

did knowingly and willfully combine, conspire, confederate, and agree with each other, Dike Ajiri, and others, known and unknown to the grand jury, to violate

Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

### Purpose of the Conspiracy

27. It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things, (a) submitting and causing the submission of false and fraudulent claims to Medicare through Mobile Doctors for services that were medically unnecessary, that were not eligible for Medicare reimbursement, and that were often never provided; (b) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of the proceeds from the fraud; and (c) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators in the form of compensation and other remuneration.

## Manner and Means

The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

28. **D-1 GERALD DANESHVAR, D-2 STEPHEN MASON**, and **D-3 LEONARD VAN GELDER** certified to Medicare that they would comply with all Medicare Rules and Regulations, including that they would not knowingly present or cause to be presented, a false and fraudulent claim for payment by Medicare.

29. Thereafter, **D-1 GERALD DANESHVAR, D-2 STEPHEN MASON**, and **D-3 LEONARD VAN GELDER** devised and engaged in a scheme to charge Medicare for: (a) medically unnecessary home health care services; (b) the highest billing codes for both new and existing beneficiaries, even when the highest billing codes were not supported by either the time of complexity of the purported visits; and (c) medically unnecessary diagnostic testing.

30. **D-1 GERALD DANESHVAR, D-2 STEPHEN MASON**, and **D-3 LEONARD VAN GELDER**, Ajiri, and other co-conspirators falsified, fabricated, altered, and caused the falsification, fabrication, and alteration of Mobile Doctors medical records, to include Face-to-Face Forms and routing slips, to support claims

to Medicare for home health care services, physician home visits and diagnostic testing that were medically unnecessary and often never provided.

31. **D-1 GERALD DANESHVAR, D-2 STEPHEN MASON,** and **D-3 LEONARD VAN GELDER** signed what they knew to be falsified, fabricated and altered medical records.

32. **D-1 GERALD DANESHVAR, D-2 STEPHEN MASON,** and **D-3 LEONARD VAN GELDER** would order, or provide their signature on orders, for unnecessary diagnostic testing, which they knew was then subsequently billed to Medicare.

33. **D-1 GERALD DANESHVAR, D-2 STEPHEN MASON,** and **D-3 LEONARD VAN GELDER** would falsely and fraudulently certify that the MD patients needed home health services and that the services otherwise qualified for payment under Medicare.

34. **D-1 GERALD DANESHVAR, D-2 STEPHEN MASON,** and **D-3 LEONARD VAN GELDER** would submit or cause the submission of claims to Medicare at the top two complexity codes for almost all new and established patient visits even though they did not perform visits of that level or complexity.

35. **D-1 GERALD DANESHVAR, D-2 STEPHEN MASON,** and **D-3 LEONARD VAN GELDER**, Ajiri and their co-conspirators, submitted and caused to be submitted claims to Medicare in an approximate amount of $17.1

million for services, including home visits, testing, and home health services, that were not medically necessary and were not provided.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS 2-7
### (18 U.S.C. §§ 1347 and 2 – Health Care Fraud)
### D-1 GERALD DANESHVAR
### D-2 STEPHEN MASON
### D-3 LEONARD VAN GELDER

36. Paragraphs 1 through 24 of this First Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

37. On or about the dates enumerated below, in Wayne County, in the Eastern District of Michigan, and elsewhere, the defendants,

**GERALD DANESHVAR,**
**STEPHEN MASON,**
**and**
**LEONARD VAN GELDER,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of Medicare, in connection with the delivery of and payment for health care benefits, items and services.

### Purpose of the Scheme and Artifice

38. It was the purpose of the scheme and artifice for the defendants and co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare; (b) concealing the submission of false and fraudulent claims to Medicare and receipt and transfer of fraud proceeds; and (c) diverting fraud proceeds for the personal use and benefit of themselves and others. through the submission of false and fraudulent Medicare claims for services that were not medically necessary and were not performed.

### The Scheme and Artifice

39. Paragraphs 1 through 35 of Count 1 of this First Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

### Acts in Execution of the Scheme and Artifice

40. On or about the dates specified as to each count below, in Wayne County, in the Eastern District of Michigan, and elsewhere, the defendants, as set forth below, acting in concert with and aided by others, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit and attempt to execute, the

above-described scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of said health care benefit program:

| Count | Defendant(s) | Medicare Beneficiary | On or About Claim Date | Description of Item Billed | Approximate Amount Billed to Medicare |
|---|---|---|---|---|---|
| 2 | D-1 Daneshvar | G.S. | 6/5/2013 | 99349 – HOME VISIT ESTABLISHED PT MOD TO HIGH SEVERITY | $205.00 |
| 3 | D-1 Daneshvar | K.B. | 11/3/2012 | 99349 – HOME VISIT ESTABLISHED PT MOD TO HIGH SEVERITY | $200.00 |
| 4 | D-2 Mason | C.S. | 6/15/2012 | 99349 – HOME VISIT ESTABLISHED PT MOD TO HIGH SEVERITY | $200.00 |
| 5 | D-2 Mason | C.R. | 11/29/2012 | 99349 – HOME VISIT ESTABLISHED PT MOD TO HIGH SEVERITY | $200.00 |

| Count | Defendant(s) | Medicare Beneficiary | On or About Claim Date | Description of Item Billed | Approximate Amount Billed to Medicare |
|---|---|---|---|---|---|
| 6 | D-3 Van Gelder | M.H. | 3/23/2013 | 99349 – HOME VISIT ESTABLISHED PT MOD TO HIGH SEVERITY | $205.00 |
| 7 | D-3 Van Gelder | R.M. | 6/4/2012 | 99349 – HOME VISIT ESTABLISHED PT MOD TO HIGH SEVERITY | $200.00 |

In violation of Title 18, United States Code, Sections 1347 and 2.

**Forfeiture Allegations**
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461;
18 U.S.C. § 982(a)(7)—Criminal Forfeiture)

41.   The above allegations contained in this Superseding Indictment are incorporated by reference as if set forth fully herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Sections 981 and 982, and Title 28, United States Code, Section 2461.

42.   As a result of the violation of Title 18, United States Code, Section 1349, as set forth in this Indictment, defendants **D-1 GERALD DANESHVAR, D-2 STEPHEN MASON,** and **D-3 LEONARD VAN GELDER** shall forfeit to

the United States any property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violation, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461.

43. As a result of the violations of Title 18, United States Code, Sections 1347 and 2, as set forth in this Indictment, defendants **D-1 GERALD DANESHVAR, D-2 STEPHEN MASON,** and **D-3 LEONARD VAN GELDER** shall forfeit to the United States any property, real or personal, that constitutes or is derived from, gross proceeds traceable to the commission of such violations, pursuant to 18 U.S.C. § 982(a)(7).

44. *Substitute Assets*: If the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

    a. Cannot be located upon the exercise of due diligence;

    b. Has been transferred or sold to, or deposited with, a third party;

    c. Has been placed beyond the jurisdiction of the Court;

    d. Has been substantially diminished in value; or

    e. Has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b) and/or 28 U.S.C. § 2461, to seek

to forfeit any other property of the defendants up to the value of the forfeitable property described above.

45.  Money Judgment: A sum of money equal to at least $17.1 million in United States currency, or such amount as is proved at trial in this matter, representing the total amount of proceeds obtained as a result of defendant's violations of 18 U.S.C. §§1349 and 1347, as alleged in the Indictment.

All pursuant to Title 18, United States Code, Section 982(a)(7).

THIS IS A TRUE BILL.

s/Grand Jury Foreperson
Grand Jury Foreperson

BARBARA L. MCQUADE
UNITED STATES ATTORNEY


s/Wayne Pratt
WAYNE PRATT
Deputy Chief, Health Care Fraud Unit
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226

s/Allan Medina
ALLAN J. MEDINA
Assistant Chief
Criminal Division, Fraud Section
United States Department of Justice
1400 New York Avenue, N.W., Eighth Floor
Washington, DC  20005
(202) 257-6537

s/Amy Markopoulos
AMY MARKOPOULOS
Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, DC 20005
(202) 230-0595


Dated: May 5, 2016

ORIGINAL

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number<br>15-CR-20362 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

**Reassignment/Recusal Information** This matter was opened in the USAO prior to August 15, 2008  [ ]

| **Companion Case Information** | **Companion Case Number:** |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | **Judge Assigned:** |
| ☐ Yes  ☒ No | AUSA's Initials: |

Case Title: USA v. Gerald Daneshvar, et al.

County where offense occurred : Wayne

Check One:  ☒ Felony  ☐ Misdemeanor  ☐ Petty

____Indictment/____Information --- no prior complaint.
____Indictment/____Information --- based upon prior complaint [Case number:                    ]
  ✓ Indictment/____Information --- based upon LCrR 57.10 (d) [Complete Superseding section below].

**Superseding Case Information**

Superseding to Case No: 15-CR-20362        Judge:  Honorable Nancy G. Edmunds

☐ Original case was terminated; no additional charges or defendants.
☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☒ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| Stephen Mason | 18 U.S.C. §§ 1347 and 2 | |
| Leonard Van Gelder | | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

May 5, 2016
        Date

AMY MARKOPOULOS
Trial Attorney
Criminal Division, Fraud Section
211 West Fort Street, Suite 2001
Detroit, MI 48226-3220
Cell:  (202) 230-0595
Office:  (313) 226-9642
amy.markopoulos@usdoj.gov

Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.
04/13